# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ROMARCUS DEON MARSHALL, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-4302 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Romarcus Deon Marshall, a state inmate proceeding *pro se* and *in forma pauperis*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction. Respondent filed a motion for summary judgment (Docket Entry No. 14), to which petitioner responded (Docket Entry No. 15).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court will grant the motion for summary judgment and dismiss this case.

## I.  Procedural Background

Petitioner was convicted of capital murder and sentenced to life imprisonment.  The state court of appeals affirmed the conviction. *Marshall v. State*, No. 07-01-0426-CR, 2003 WL 23024515 (Tex. App. – Amarillo 2003, pet. ref'd) (not designated for publication).  The Texas Court of Criminal Appeals refused discretionary review and denied his application for state habeas relief.  *Ex parte Marshall*, Application No. 62,634-01.

Petitioner timely filed the instant petition, raising the following grounds for federal habeas relief:

(1)     a *Brady* violation;

(2)     ineffective assistance of trial counsel; and

(3)     improper closing argument.

Respondent moves for summary judgment on all three habeas grounds.

## II.  Factual Background

The state court of appeals set forth the following statement of facts in its opinion:

In the early morning hours of January 18, 2000, three men forced their way into the trailer residence of Anastacio Sandoval.  All of the men were armed with firearms and one of them, a black male, was wearing a bulletproof vest. Sandoval, Jose Murillo, Esmerelda Cordero and Emory Zepeda were asleep inside the trailer.   Murillo, who had been sleeping in the living room, recognized one of the men as Brian Grabow.  While Grabow held Murillo in the living room at gunpoint, the black male entered the bedroom where Sandoval and Cordero were sleeping and the other white male, later identified as Brad Hanes, entered the northern bedroom where Zepeda was located.  The three intruders then proceeded to loot the trailer, taking money, drugs, and other items including some tire rims and a shotgun.  As Hanes, Grabow and the black male began to leave the residence, Sandoval stood up and approached Hanes.  Hanes was holding an assault rifle pointed at Sandoval. The rifle discharged and Sandoval collapsed, having been shot in the chest. He died at the scene.  The intruders fled in a dark colored SUV-type vehicle.

Harris County Sheriff's Office detectives Wayne Kuhlman and Larry Davis investigated Sandoval's death.   From witness statements, they identified Grabow as a suspect.  Grabow was arrested the same day, and he gave a statement implicating appellant.  A warrant was obtained for appellant's arrest. Kuhlman and other detectives drove to appellant's apartment, where appellant was located and gave consent for a search of his apartment.

2

In searching appellant's apartment, the officers found five firearms, including an assault rifle which was later identified by the State's expert witness on ballistics as being the weapon that fired the bullet that killed Sandoval.  The officers also found a bulletproof vest belonging to appellant.

After receiving information that the shotgun taken from Sandoval's residence might be located in appellant's apartment, a second written consent to search the apartment was obtained from appellant.  The shotgun was found on a shelf over the refrigerator in the kitchen.

Appellant was indicted for capital murder.  He pled not guilty.  Trial was to a jury.  The State's theory was that appellant was criminally responsible for the killing of Sandoval by Hanes because appellant was part of a conspiracy with Hanes to commit the felony offense of robbery of Sandoval; during the course of the robbery Hanes intentionally caused Sandoval's death by shooting him; and the killing was in furtherance of committing the robbery and should have been anticipated as a result of the carrying out of the conspiracy.

The surviving victims of the robbery were among the State's witnesses, as was Grabow.  Appellant testified in his [own] defense.  The victims could not identify appellant as having participated in the robbery, although they testified that one of the robbers was a black male.  Grabow testified that appellant was the black male who participated in the robbery.  According to Grabow, Hanes asked him if Grabow could score some dope.  Grabow told Hanes that he could get some dope from Sandoval, whereupon Hanes suggested that they just rob Sandoval instead.  Grabow agreed and later the two of them and a woman named Crystal went to appellant's apartment.  Grabow testified that Hanes was armed with a nine-millimeter handgun at this time.

According to Grabow, when they arrived at appellant's apartment, Hanes went inside by himself.  After approximately 15 minutes, Crystal also went inside the apartment.  After a few more minutes, appellant, Hanes and Crystal all came out of the apartment.  Appellant was carrying two guns.  Appellant, Grabow, Hanes and Crystal got in appellant's blue SUV and they drove to Sandoval's residence.  Grabow testified that while they were en route to Sandoval's trailer residence, appellant asked how many people lived there, asked whether they had any guns, and asked where they kept the dope and money.  Grabow supplied the information requested by appellant, and also opined that the persons in the trailer 'ain't just weak. They was going to

probably try to defend theirself [sic].'   Grabow stated that appellant was wearing a bulletproof vest.

According to Grabow, appellant pulled the vehicle into the driveway, the three men approached the front door, appellant kicked the door in, the intruders entered with guns drawn and went into different rooms.  Grabow testified that he could hear appellant in a bedroom asking Sandoval where the dope was.  Grabow testified that appellant forced Sandoval and Cordero into the living room and forced them to lie down on the floor.  Appellant then went into the northern bedroom and removed some tire rims.  As Hanes and Grabow were helping appellant take the rims out to his vehicle, Sandoval stood up and began approaching Hanes, who was standing at or about the threshold of the outside door.  Hanes was pointing the gun towards Sandoval's chest when the gun discharged and Sandoval was shot.  Grabow testified that he never saw Sandoval grab the gun.

According to Grabow, appellant, Hanes, Grabow and Crystal then drove back to appellant's apartment.  Later, appellant took out $350 and told them to split it up.  Grabow took out a 'quarter of crack' which he had stolen during the robbery and they split that up also.

Dr. Patricia Moore of the Harris County medical examiner's office autopsied Sandoval's body and testified that Sandoval died from a single gunshot wound to the chest.  Moore testified that the bullet was fired from within 18 inches of Sandoval's chest and traveled right to left and front to back on a downward trajectory.  She testified that the exit wound was about six inches lower than the entrance wound, which would be consistent with either the gun being angled downward or Sandoval leaning forward when the gun was fired.

Appellant denied involvement in a plan to rob Sandoval, in the robbery itself, or in the shooting.  He testified that his involvement in the affair was limited to following Hanes and Grabow to Sandoval's residence to retrieve his gun, which he testified Hanes and Grabow removed from his residence without permission.  Appellant testified that he took another one of his guns with him.  He testified that he never entered Sandoval's residence and that it must have been a different black male wearing a bulletproof vest that committed the robbery with Hanes and Grabow.  He testified that while he was outside Sandoval's trailer he heard a gunshot and he then saw Hanes and Grabow take off running.  He said he retrieved his gun from Hanes and then he saw Hanes

4

and Grabow get in a Ford Thunderbird and drive off.  Appellant saw a black male sitting in the Thunderbird on the passenger side.  Appellant stated that he then left and drove back to his residence where he stored his guns.  He testified that he then drove to a residence where Hanes and Grabow were; he got into an altercation with Hanes; and Hanes sustained a broken wrist.  He testified that Grabow grabbed a shotgun, appellant took the shotgun away from Grabow, and appellant then returned to his residence with the shotgun he took from Grabow.

*Marshall*, at \*1 (footnotes, citations omitted).

### III.   The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## IV.  *Brady* Violation

In *Brady v. Maryland*, the Supreme Court held that the prosecution's suppression of requested evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment.  373 U.S. 83, 87 (1963); *see also Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).  *Brady* applies to both impeachment and exculpatory evidence.  *Hudson v. Whitley*, 979 F.2d 1058, 1066 (5th Cir. 1992) (per curiam).

To establish a *Brady* violation, a defendant must prove that the prosecution suppressed material evidence favorable to the defense.  The test for materiality is whether there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reviewing court may consider any adverse effects the prosecutor's failure to release information might have had on the defendant's preparation and presentation of the case. *Derden v. McNeel*, 938 F.2d 605, 617 (5th Cir. 1991). A petitioner must show that discovery of the allegedly favorable evidence was not the result of a lack his own due diligence. *Rector*, 120 F.3d at 558. The state does not have a duty to disclose information that is available to defendant from other sources. *Id.* at 559. In order to obtain relief on a *Brady* claim, petitioner must demonstrate a reasonable probability that, but for the error, the result of the proceeding would have been different. *Barrientes v. Johnson*, 221 F.3d 741,756 (5th Cir. 2000).

In the instant case, petitioner alleges that after his conviction, he learned that the State had not turned over a copy of his police intake description, which described his height, weight, and build at the time of his arrest. Petitioner argues that this description was material to his defense because it did not match the description of the black male assailant given by witness Cordero. Although Cordero was unable to make an in-court identification of petitioner as the black male assailant, she testified that petitioner's body at trial looked similar to that of the assailant. (S.F. Vol. III, p. 157.) Petitioner alleges that he gained weight in jail prior to trial. He contends that had the jury known his height, weight, and build at the time of his arrest, it would not have convicted him. *Ex parte Marshall*, Supplemental Transcript, p. 22.

In rejecting this claim, the state habeas court found that petitioner failed to allege sufficient facts which, even if true, would demonstrate that the State withheld exculpatory evidence under *Brady*. *Ex parte Marshall*, Supplemental Transcript, p. 36. The Texas Court of Criminal Appeals relied on this finding in denying habeas relief.

A review of the record fails to reveal that trial counsel was unaware of the intake description or that the State did not turn the document over to defense counsel in response to counsel's *Brady* motion. Nor does the record show that petitioner and his counsel did not know petitioner's height, weight, and build as of the time of his arrest. Moreover, petitioner took the stand during guilt-innocence and had an opportunity to inform the jury of any post-arrest weight, height, or other body changes he underwent. In short, petitioner establishes neither the State's suppression of the police intake document nor a reasonable probability that had the State disclosed the document, the results of his trial would have been different.

Petitioner fails to present clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of petitioner's *Brady* claim. The state court's findings reasonably applied the law to the facts, were not inconsistent with clearly established federal law as determined by the Supreme Court, and were not objectively unreasonable. Petitioner fails to show a basis for the relief he seeks, and respondent is entitled to summary judgment on this claim. 28 U.S.C. § 2254(d)(1).

## V.   Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

9

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id*.

In the instant case, petitioner complains that trial counsel was ineffective in failing to object to the prosecution's jury argument that he struck a police officer with his vehicle while fleeing the scene of the offense.  Petitioner testified at trial that a short time after the offense, a man pointed a gun at him while petitioner was driving a vehicle.  Petitioner stated he did not know the man was a police officer, and that he sped up to get past him.  The man shot at petitioner's vehicle, shattering the back window.  Petitioner then was apprehended by several other police officers and arrested.   The police officers, however, testified that petitioner was attempting to flee the scene and that he deliberately knocked the officer down, causing his gun to discharge and strike petitioner's back window.

During closing argument, the prosecution stated as follows:

But we have evidence that connects the defendant with the crime.  The murder weapon is found in his apartment.  The victim's shotgun is found in his apartment.  We also have, the defendant's statements tend to connect the defendant with the crime.  We also have extraneous offenses in here, where the defendant flees from the police, when he commits the aggravated assault and

10

tries to run over [the police officer].  You're allowed to consider that as evidence.  And there are certain theories under the law, what you're allowed to consider it for.

Ladies and gentlemen, I suggest to you that when he tried to run over [the police officer], it was evidence of guilty knowledge.  And that's one of the theories of law that you're allowed to consider when you're looking at those extraneous offenses.

(S.F. Vol. 7, pp. 10-11.)  Petitioner claims that counsel should have objected to the extraneous offense argument because it violated the trial court's pretrial order in limine regarding extraneous offenses.  His argument is without merit.  It was not improper under state law for the prosecution to address and make reasonable deductions from the evidence during closing argument.  *See Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990).  That petitioner's behavior in accelerating his car and running into the police officer suggested "guilty knowledge" of the primary offense was a reasonable deduction from the evidence.  Petitioner fails to show that trial counsel's objection to the prosecution's closing argument would have been granted, and fails to show either deficient performance or prejudice under *Strickland*.  Counsel is not deficient in failing to raise groundless objections.  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

In his response to the motion for summary judgment, petitioner raises a new claim that counsel should have objected to the police officer's testimony that petitioner accelerated his vehicle and ran into the officer.  Respondent correctly argues that the issue is unexhausted, procedurally defaulted, and barred from consideration by this Court.  *See Martinez v.*

*Johnson*, 255 F.3d 229, 239 (5th Cir. 2001).  Regardless, the Court has considered the issue and finds it without merit.  Evidence of a defendant's conduct after the commission of a crime that is indicative of a "consciousness of guilt" may be admitted under state law as a circumstance tending to prove that the defendant committed the act with which he is charged. *Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App. – Corpus Christi 1993, pet. ref'd). Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn as long as it is first shown that it has some relevance to the offense under prosecution. *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994).

In the instant case, it is uncontroverted that petitioner accelerated his vehicle and tried to escape from the armed man blocking his way.  Testimony from police officers that petitioner intentionally accelerated his vehicle and struck the police officer while fleeing from the officer's efforts to stop him made the existence of some consciousness of guilt more probable.  *See Valdez v. State*, 623 S.W.2d 317, 321 (Tex .Crim. App. 1981).  Petitioner does not show that the evidence was inadmissible under state law, and fails to establish that counsel was deficient in failing to make a groundless objection.  *Koch*, 907 F.2d at 530.

Petitioner fails to present clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of this claim.  The state court's findings reasonably applied the law to the facts, were not inconsistent with clearly established federal law as determined by the Supreme Court, and were not objectively unreasonable.

12

Petitioner fails to show a basis for the relief he seeks, and respondent is entitled to summary judgment on this claim.  28 U.S.C. § 2254(d)(1).

## VI.  Improper Closing Argument

Petitioner complains that the prosecution denied him a fair and impartial trial by injecting the following personal opinion comments into closing argument:

> We also talked about accomplice testimony.  And you heard Mr. Grabow.  He's an accomplice.  He's charged with capital murder, just as Brad Hanes was. They're all three accomplices.  They're guilty of capital murder.

(S.F. Vol. VII, p. 10.)  Petitioner circuitously argues that because the evidence did not show he committed the offense, the prosecution's argument was not "summation" of the evidence but rather improper personal opinion.

The state court of appeals found the evidence factually sufficient to support the conviction, and factual insufficiency of the evidence is not a cognizable federal habeas claim. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Woods v. Cockrell,* 307 F.3d 353, 357-58 (5th Cir. 2002).  Further, a review of the record shows that the prosecution's argument was a fair summation of the evidence, and petitioner's claim to the contrary is patently groundless. *See Marshall v. State*, pp. 2-6.

The state court denied habeas relief.  A careful review of the record and the state court's determinations shows that petitioner fails to present clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of this claim. The state court's findings reasonably applied the law to the facts, were not inconsistent with

13

clearly established federal law as determined by the Supreme Court, and were not objectively unreasonable.  Petitioner fails to show a basis for the relief he seeks, and respondent is entitled to summary judgment on this claim.  28 U.S.C. § 2254(d)(1).

### VII.   Conclusion

The motion for summary judgment (Docket Entry No. 14) is **GRANTED**.  The petition for habeas relief is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is **DENIED**.  Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on January 18, 2007.

_____
Gray H. Miller
United States District Judge